UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| L.M., *by and through her parents and next friends*, M.M. and M.M., <br><br> Plaintiff, <br><br> V. <br><br> HENRY COUNTY BOARD OF EDUCATION, *et al.*, <br><br> Defendants. | Civil No. 3:18-cv-00037-GFVT <br><br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Henry County Board of Education's Motion for Additional Findings. [R. 43.] Displeased with the portion of the Court's previous Opinion and Order which awarded compensatory education to Plaintiff L.M., Defendant now asks the Court to provide specific findings of fact in support of those remedies. For the reasons that follow, Defendant's motion is **GRANTED in part** and **DENIED in part**.

**I**

L.M. brought this suit pursuant to the Individuals with Disabilities Education Act (IDEA),[1] seeking partial reversal of a final decision by the Exceptional Children Appeals Board. [R. 1.] Defendant Henry County Board of Education filed a counterclaim, also seeking partial reversal of the Appeals Board's decision. [R. 3.] Specifically, Defendant disputed the Appeals Board's finding that it failed to provide a Free Appropriate Public Education (FAPE). [*See* R.

---

[1] As noted previously, Individuals with Disabilities Education Act (IDEA) cases require numerous acronyms. *See B.R. ex rel. K.O. v. New York City Dept of Educ.*, 910 F. Supp. 2d 670, 672 n. 1 (S.D.N.Y. 2012) ("[A]cronyms have so invaded IDEA practice that this judge, like others before him, is pretty much stuck with having to use them."). To the extent possible the Court uses alternatives to those acronyms.

25.] This Court entered an Opinion and Order denying both L.M. and Defendant's motions for judgment of reversal. [R. 37 at 11.] As part of that Order, the Court upheld, with minor modifications, the Appeals Board's decision with regard to the compensatory education awarded to L.M. *Id.* at 10–11.

Defendant now asks the Court to provide additional findings in support of the decision to uphold the compensatory education award. [R. 43 at 1.] It argues the Court failed to provide sufficient evidence to support the decision, as required by Sixth Circuit precedent. *Id.* at 3. In response, Plaintiff L.M. argues Defendant's motion is procedurally flawed and asks the Court to "go[] beyond the record to fashion the appropriate remedy." [R. 45 at 2, 4.]

## II

### A

Defendant requests the Court make additional findings under Rule 52(b), a subsection which Defendant acknowledges "facially contemplates a post-judgment request for additional findings." [R. 43 at 1.] In support, Defendant represents it is not asking the Court to alter any conclusion reached but simply for additional findings so that it may better "address this issue on appeal . . . ." *Id.* at 3. Because there is no final judgment the Court will review Defendant's request under another, more flexible rule.

Under Federal Rule of Civil Procedure 54(b), "any order or . . . decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See also Wilson v. United States Air Force*, No. 5:08CV324-JMH, 2009 WL 10676029, at *1 (E.D. Ky. Nov. 12, 2009). Ordinarily, Rule 54(b) reconsideration is proper in three circumstances: "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent

2

manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952 (6th Cir. 2004) (citations omitted). However, based on the plain language of the rule and a district court's inherent authority prior to final judgment, a court may also revise an interlocutory order in the interest of judicial economy. *See Wilson*, 2009 WL 10676029, at *1. Where, as here, a litigant seeks additional findings to clarify the record prior to appeal, judicial economy is served by reviewing such a request to determine if any clarification or revision is necessary.[2]

**B**

In IDEA cases, a court is to review the administrative record as well as any additional evidence introduced by the parties. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 205 (1982) (citation omitted). Ultimately, the court, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). In conducting this review, courts are to make an independent decision "but also should give 'due weight' to the determinations made during the state administrative process." *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2004) (quoting *Rowley*, 458 U.S. at 206). The Supreme Court has made clear that the provision requiring a reviewing court to "base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206.

**1**

In the present case, applying these standards, the Court reviewed and largely upheld the compensatory education awards granted to L.M. by the Appeals Board. [R. 37 at 11.] After

---

[2] Defendant also asserts, in passing, that the Court's failure to provide more findings of fact resulted in a "manifest error of law." [R. 46 at 3.] Defendant fails to expand on this assertion and there is little support for this line of argument.

3

minor modification, Defendant was directed to do three things as part of the equitable remedy: (1) redo L.M.'s Functional Behavior Assessment (FBA); (2) provide back occupational therapy of thirty minutes per week from the date "the child went on homebound" up until a new Individualized Education Program (IEP) is developed; and (3) provide one-on-one behavioral support for at least 300 minutes per week while L.M. transitions back to the school system until a new IEP is developed.[3] *Id.* Defendant believes the Court failed to establish "strong evidence in the record" to support these "drastic remedies," as required by Sixth Circuit precedent. [R. 43 at 3.]

Defendant argues strong evidence is required to support these remedies based on the Sixth Circuit decision in *Bd. of Educ. of Fayette Cty., Ky. v. L.M.*, 478 F.3d 307, 317 (6th Cir. 2007).[4] But Defendant's attempted application of the holding in *Fayette Cty. v. L.M* to this case largely misses the mark. In that case, the Appeals Board ordered the school district to provide compensatory education in an amount to be determined by the child's Admissions and Release Committee. The district court reviewed and adopted this flexible approach, as opposed to an alternative "rote hour-by-hour compensation award." *Id.* at 316. On appeal to the Sixth Circuit, the child and his guardian argued that the flexible remedy was "'vague, unenforceable' and 'allow[ed] the school district to determine the remedy for its wrongdoing.'" *Id.* at 315–16. As an alternative, appellants sought hour-for-hour compensation for the time the child was allegedly denied a FAPE—an award which would have equaled 2,425 hours. *Id.* at 316. On that distinguishable procedural posture, the Sixth Circuit rejected the appellants' request, finding that

---

[3] The Court has clarified that Defendant is only required to conduct a new FBA if L.M. chooses to return to Henry County Schools. Logically, the directives to provide occupational therapy and one-on-one behavioral support are also contingent on such a return. [*See* R. 22-1 at 298.]

[4] Although the initials of the child are the same as the present case, these cases concern two different children. Review of the record reveals that the L.M. before the Court was approximately two years old at the time of *Fayette Cty.* decision in 2007.

4

while the child "may well need more than the 125 hours of compensatory education initially awarded by the hearing officer," there was no basis to a claim that he needed "over 2,400 hours of remedial instruction in order to arrive on equal footing with his classmates." *Id.* at 316–317. The Sixth Circuit explained this type of drastic award—nearly twenty times what was awarded initially by the hearing officer—would need to be supported by strong evidence in the record. *Id.* at 317.

Defendant now seeks to equate the requested remedy in *Fayette Cty. v. L.M.* to the hour-by-hour relief awarded in this case. First, the procedural posture here is significantly different. Unlike in *Fayette Cty. v. L.M.*, in this case it was the Appeals Board that, after conducting a thorough review of the record, initially ordered the hour-by-hour relief. [R. 22-1 at 297–98.] And, second, the relief awarded here is also significantly different.

Per the Court's Order, L.M. is entitled to two types of compensatory education.[5] [R. 37 at 11.] First, she is entitled to 300 minutes per school week of one-on-one behavioral support while she transitions back to the school system until a new IEP and BIP are developed. *Id.* And, second, L.M. is entitled to at least thirty minutes per week of occupational therapy from the time when she went homebound until a new FBA is conducted (which has yet to occur). *Id.* According to Defendant's calculations, this latter remedy now amounts to more than 104 hours of remedial occupational therapy and counting. [R. 43 at 7.] Even combined, these awards are far less than the 2,400 hours of compensatory education the Sixth Circuit categorized as drastic.

---

[5] Defendant also takes issue with the order to re-do the FBA, arguing it is not clear if L.M. has any ongoing behavior concerns more than four years after the disability determination was made. [R. 43 at 9.] But the Court is confined to the record before it and there is no evidence L.M. has completely resolved her behavioral issues. Of course, any changes in L.M.'s condition can *and should* be taken into consideration by the Admissions and Release Committee when they undertake the new FBA. If L.M. no longer experiences the same behavioral issues once the new FBA is finally conducted, then her educational plan can be altered accordingly.

The Court therefore declines Defendant's invitation to provide an extended recitation of the evidence which supports the relief awarded.

This established, for purposes of the record on appeal, the Court will briefly clarify as to the reasons underlying the decision to uphold the compensatory education awards. First, the record reflects that, in large part, it was Henry County School's failures to provide the necessary attention and resources that resulted in continued and escalating behavioral problems for L.M. [*See e.g.*, R. 22-1 at 291 ("The behavior plan was revised but, because there wasn't truly an analysis of the function of the Student's behaviors, the attempted interventions might as well have been darts thrown at a dart board."). So, the Appeals Board determined Defendant may need more direction in providing a suitable educational environment to L.M. while she transitioned back into the public school system. The Court has no reason to question that conclusion. *Rowley*, 458 U.S. at 206. And, to this point, it is clear that the relief provided L.M. will help ease what will likely be, based on previous behavioral problems, a difficult transition back into the public school system.

At the time of this Court's Opinion and Order in September 2019, L.M. had not attended Henry County Schools in over three years. [*See* R. 30 at 6; R. 37 at 4 (acknowledging that L.M. may never return to enrollment in Henry County Schools).] Anecdotal evidence reflects that in the intervening time period L.M. made significant academic and social progress while enrolled at Summit Academy. [R. 38 at 6; R. 38-1.] As one Summit Academy teacher explained, "[L.M.] has also benefited from the small class size and daily support from the staff. The personal environment that Summit Academy provides has helped her begin to internalize strategies to be more proactive in the way she approaches her day-to-day challenges." [R. 38-1.] But reports from Summit Academy staff also indicated that L.M. continues to struggle with controlling her

temper, in addition to facing other behavioral issues. [R. 38-2.] On the whole, the record reflects that in order to succeed going forward, L.M. needs personal attention and a supportive environment. *See id.* Occupational therapy and one-on-one behavioral support accomplish just that. Indeed, this relief is in line with the treatment recommendations of numerous behavioral professionals. [*See* R. 22-1 at 274, 277–78.]

And, a significant amount of this type of personal attention may very well be required to ease the transition. At the end of her fifth-grade year, L.M. left a school which did not provide her the necessary tools to succeed and was entered in a private school which provided a more supportive environment. Now, L.M. may be faced with returning to the very environment where she struggled previously.[6] Late middle school and early high school are trying times for many children. Add in significant behavioral issues and the challenges associated with switching schools—meeting new teachers, making new friends, and adjusting to new curriculum—and things become all the more difficult. *See, e.g.*, *Norristown Area Sch. Dist. v. F.C.*, 636 F. App'x 857, 863 (3d Cir. 2016) (acknowledging that transitioning a disabled child into a new school system must be done with caution). The compensatory education awards were crafted in light of these realities, seeking to provide substantial support to L.M. as she makes this transition.

### 2

To the extent Defendant argues Henry County Schools should be given more discretion in crafting the appropriate approach, the Sixth Circuit's opinion in *Fayette Cty. v. L.M.* cuts squarely against such a contention. While the *Fayette Cty. v. L.M.* court rejected appellants' request to order more than 2,400 hours of compensatory education relief, the court also found

---

[6] The record reflects that, at the time of the Appeals Board's decision in June 2018, L.M. was about to enter her eighth grade year; at the time of this Court's Opinion and Order, entered in September 2019, L.M. had just begun her ninth grade year. [*See* R. 38-2 at 3; R. 43 at 3.]

that the Appeals Board's decision to delegate to the Admissions and Release Committee "the power to reduce or terminate a compensatory-education award" was improper. *Id.* at 318. It explained that a large contingent of that Committee was made up of employees of the school district and, therefore, there was the potential those members may exert undue influence as to the amount awarded. *Id.* ("[T]he possibility of the School District exerting an undue influence in his particular case is not great, but we decline to approve a practice that might have such an impermissible effect in the future."). For these reasons, the court remanded with instructions to reconsider the remedy awarded. *Id.* Here, the relief ordered by the Appeals Board and upheld by the Court strikes the appropriate balance: it provides the school system with certain amounts of discretion—for example, in crafting a new FBA—while also providing certain objective benchmarks the school system must abide by.

C

Finally, the Court notes that many of Defendant's concerns with the relief awarded stem from the passage of time since L.M.'s departure from its school system. [*See* R. 43 at 3–4.] Of course, delays are often inevitable with claims that must first be brought before administrative authorities prior to review by the courts. And here, the record reflects a long and winding administrative process: L.M.'s initial due process request occurred in July 2016 and the final appealable decision of the Appeals Board came in June 2018. [R. 22-1 at 2, 298.] L.M. then brought suit in this Court in July 2018 and, following extended motion practice, this Court entered its Opinion and Order in September 2019, leaving unresolved only the issue of attorneys' fees. [*See* R. 37 at 11.] Both sides have now sought to challenge the holdings of that Opinion and Order, while indicating an appeal is forthcoming. [*See* R. 38; R. 41; R. 43 at 1.]

8

The Court certainly acknowledges that the parties want to get this right and to protect their financial interests. And, as it stands, those interests have been protected. But there is another cause for concern with these delays. First and foremost, a child's educational needs are at issue here. The longer this process lasts, the longer L.M. goes without the relief awarded which, on the present record, she needs to develop at this formative stage in her life. Indeed, "[t]he purpose of the IDEA is to give children with disabilities a free appropriate public education designed to meet their unique needs." *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 853 (6th Cir. 2004) (citing 20 U.S.C. § 1401) (citation omitted). Everything else included as part of the statutory scheme is in support of this goal. In other words, while the IDEA also addresses the rights of parents and the resources to be provided educators, logically, these features are simply meant to "ensure the effectiveness of [] efforts to educate children with disabilities." 20 U.S.C. § 1400(d)(4). Going forward, each of the parties should bear in mind that their primary responsibility is to this child.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant's Motion for Additional Findings, construed as a motion for reconsideration [**R. 43**], is **GRANTED in part** and **DENIED in part**, consistent with the above clarifications; and

2. All other matters being resolved, attorney's fees will be determined upon a showing of the Plaintiff's attorney.

This the 6th day of July, 2020.

Gregory F. Van Tatenhove
United States District Judge